# *Jeffrey R. Parry, Esq.*

_____

## Attorney and Counselor at Law

_____

Manuel Katsoulis, Esq.                              JeffreyParry404@gmail.com

7030 East Genesee Street
Fayetteville, N.Y. 13066
(315) 424-6115
(315)622-4829 – facsimile
- not for service of process -

May 3, 2019

Hon. Christian Hummel
United States District Court NDNY
James T. Foley U.S. Courthouse
445 Broadway
Albany, NY 12207

Re:   *Murphy v. Onondaga County, et al*, 5:18-cv-01218-GLS-CFH

Dear Judge Hummel,

As the Court is aware, the Plaintiff in the above matter was directed to Hon. Andrew Baxter to present her motion to consolidate the matter of *Glover v. Onondaga County, et al.*  with that of *Murphy v. Onondaga County, et al*. By this letter, plaintiff makes that motion. Please note that plaintiff's motion is for purposes of joint *discovery only*. While the Plaintiffs cannot foreclose the possibility of a further motion for consolidation for other reasons, at present we only seek to join for discovery purposes as it is the most economical and efficient way of going forward. Very simply, by this motion the Plaintiff seeks a common sense solution by which to handle a burdensome amount of discovery in what have rapidly evolved into two very complex cases.

1

As a starting point, and for the convenience of all, Fed. R. Civ. P. 42 is delineated below in its entirety. This will be followed by a brief rendition of both cases and, finally, by argument and analysis.

**Rule 42. Consolidation; Separate Trials**
(a) Consolidation. If actions before the court involve a common question of law or fact, the court may:
(1) join for hearing or trial any or all matters at issue in the actions;
(2) consolidate the actions; or
(3) issue any other orders to avoid unnecessary cost or delay.
(b) Separate Trials. For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial. Fed. R. Civ. P.  42.

## I. Glover v. Onondaga County, *et al.* Facts of the Case

On or about October 19, 2016, Ms. Glover visited a Wegman's grocery store to buy groceries. She visited an ATM machine located within the store to procure money with which to buy these items. Ms. Glover purchased $46.79 worth of groceries and paid for them with three twenty-dollar bills which she had acquired from the ATM machine. Unbeknownst to Ms. Glover, two of the twenty-dollar bills appear to be counterfeit.

On or about October 20, 2016 defendant Dominick Albanese (hereinafter: defendant Albanese) initiated a police investigation into this matter. He was informed of the sum and substance of Wegman's internal investigation. Wegman's staff indicated that they did not desire prosecution.

Later that same day, Defendant Albanese appeared at the home of Ms. Glover. In spite of Ms. Glover's explanations, she was interrogated and arrested. Defendant Albanese had no reason to believe that a crime had been committed or, otherwise stated, no probable cause existed for Ms. Glover's arrest. Nevertheless, she was charged with Criminal Possession of a Forged Instrument in the First Degree, PL §170.30. Importantly, the statute contains a *mens rea* requirement that was nowhere present.

Ms. Glover was arraigned and incarcerated at the Onondaga County Justice Center where she was booked, forced to disrobe and cavity searched. She underwent physical and psychological examinations and was repeatedly denied the use of the bathroom over a period of several hours along with other indignities.

Upon information and belief, an officer working in an administrative function within the Sheriff's Department noticed that Ms. Glover was arrested without probable cause and informed the supervising officers, including Sharon MacDonald, that she should be released. This was not done however, and, in the absence of probable cause, Ms. Glover's story was the subject of additional investigation while she remained incarcerated.

At approximately 1:30 A.M. on October 21, 2016, Defendant Albanese and Defendant MacDonald informed Ms. Glover that, upon further investigation, her explanation proved to be correct. Even so, she was not immediately released. Rather, Defendant Albanese and Defendant MacDonald presented Ms. Glover with a form entitled "Certificate of Release and Waiver of Claims". Based upon their training and the policies and procedures put in place by defendants Onondaga County and the Onondaga County Sheriff's Department, Ms. Glover was informed that she would only be allowed to leave if she signed the form. The form was a general release of liability for the defendants and was imposed upon Ms. Glover as a term and condition of her release as a custom, policy and practice of defendant the Onondaga County Sheriff's Department and defendant Onondaga County. It is strongly asserted that no reasonable police officer would find this a lawful practice. Moreover, as she was required to promise not to bring suit for the unlawful arrest as a precursor to regaining her freedom, Ms. Glover was subjected to another violation of her constitutional rights under the Fourth, Fifth, Sixth, Seventh and Fourteenth Amendments.

Importantly, Onondaga County and the Onondaga County Sheriff's Department were made aware of deficiencies in the training and conduct of field personnel, and particularly repeated reports of unlawful arrests, since approximately August of 2016. Neither the County nor the Sheriff's Department did anything to remedy this situation. Instead, they relied upon a policy and practice of avoiding lawsuits by causing individuals who were wrongfully arrested to waive their right to sue in return for their release.

Most important for purposes of this motion, and certainly a consideration in all procedural and evidentiary matters going forward, is that Onondaga County Sheriff's Department officers were providing continued warnings and entreaties to

the defendants as to their shortcomings in training, supervision and management. One of those officers was Sgt. Kevin Murphy, the plaintiff I allude to below.

## II. *Murphy v. Onondaga County, et al.* Facts of the Case

Sgt. Murphy is an Onondaga County Sheriff's Deputy. He has worked in a supervisory capacity as a patrol officer, a training officer, an administrative officer, an instructor at the Onondaga County Police Academy, a member of several Combined Drug Task Force operations conducted under Federal auspices as well as in many other positions in the Onondaga County Sheriff's Department for 28 years.

Sgt. Murphy's case primarily follows two legal theories; violations of his civil rights which, in large part, goes to retaliatory actions taken against him for disclosing shortcomings in the training and supervision of patrol officers together with a whistleblower action which reveals these same chronic failures. In an exercise of his supervisory duties, Sgt. Murphy made these failings known to the Sheriff's Department and County government. Ms. Glover's case directly flows from the negligent and otherwise improper supervision, training and cover-ups that Sgt. Murphy disclosed and that led to retaliation against him.

Obviously, both of these cases are civil rights actions pursued under 42 U.S.C. § 1983 and §1985. As such, they have common elements and, since they both involve the same witnesses, records and evidence, discovery for these cases will be almost identical. Moreover, since Sgt. Murphy is a witness to the endemic failures of the Onondaga County Sheriff's Department, he is expected to be both a fact witness and an expert witness in the *Glover* case. As will be shown in the analysis below, the conduct attributable to Onondaga County and the Onondaga County Sheriff's Department is fundamental to the plaintiff actions against these two entities. Additionally, many of Sgt. Murphy's supervisors, colleagues, co-workers, training records, investigatory records, correspondence, email, etc. are common to both cases. Inevitably, many members of County government and the Sheriff's Department will be included as witnesses in both cases whether they are consolidated or not.

### Legal Analysis

Before delving into a legal analysis as to the propriety of consolidation, I wish to once again emphasize that this is a motion for discovery purposes only. As

4

we stand at the very beginning of these two complicated cases, it is simply not possible to predict how the cases will have evolved when they reach the final stages of litigation. However, it is readily apparent that discovery will involve the depositions of the same people and the disclosure of the same items of evidentiary material. As such, it makes little sense to conduct these proceedings twice. That being said, it is worth noting that Rule 42 grants almost unlimited discretion to the Court in fashioning a reasonable and prudent course for two related cases. See *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990), *cert. denied*, 498 U.S. 920 (1990) *cited in BD v. DeBuono,* 193 F.R.D. 117 (SDNY 2000).

Factors relevant in making this decision include the following.

[W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on the parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives. See id. (quoting *Hendrix v. Raybestos-Manhattan, Inc.,* 776 F.2d 1492, 1495 (11th Cir. 1985)) *cited in BD v. DeBuono*, 193 F.R.D. 117 (SDNY 2000).

Notably, consolidation would not change the rights of the parties but, rather, would only serve to economize discovery. It has been specifically noted that Rule 42(a) permits consolidation as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another. *Johnson v. Manhattan R. Co.,* 289 U.S. 479, 53 S. Ct. 721, 77 L. Ed. 1331 (1933); *Zdanok v. Glidden Co., Durkee Famous Foods Div.,* 327 F.2d 944, 55 L.R.R.M (BNA) 2249, 48 Lab. Cas. (CCH) P18724 (2d Cir.), *cert. denied*, 377 U.S. 934, 84 S. Ct. 1338, 12 L. Ed. 2d 298, 56 L.R.R.M. (BNA) 2224, 49 Lab. Cas. (CCH) P18986 (1964). [W]here both suits arise from the same operative facts, and substantially the same witnesses will testify in both cases, consolidation is particularly appropriate and will serve the purpose of "trial convenience and economy in administration." MacAlister v. Guterma, 263 F.2d 65, 68 (2d Cir. 1958) *cited in De Figueiredo v. Trans World Airlines, Inc.,* 55 F.R.D. 44 (SDNY 1971).

Importantly, as these are both 42 U.S.C. §1983 actions, and since it has been universally held that there is no such thing as *respondeat superior* in cases of this type, plaintiffs intend to prove in both cases the presence of deliberate and or reckless indifference, gross negligence and participation in customs and policies which led to the harms afflicted herein. *Respress v Coughlin* 585 F Supp 854 (SDNY 1954). Actual or constructive notice is a requirement that plaintiffs strongly insist is present. Id.

A municipal policy may be pronounced or tacit and reflected in either action or inaction. In the latter respect, a "city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution." *Connick v. Thompson*, 131 S. Ct. at 1360 (internal quotation marks omitted); *see also City of Canton v. Harris*, 489 U.S. at 396 (O'Connor, J., concurring in part and dissenting in part) ("Where a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of *Monell* are satisfied."). Consistent with this principle, "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (Sotomayor, J.) (internal quotation marks omitted).

As the Supreme Court has cautioned, HN6 "deliberate indifference" is "'a stringent standard of fault,'" *Connick v. Thompson*, 131 S. Ct. at 1360 (quoting *Board of Cnty. Comm'rs v. Brown*, 520 U.S. at 410), and necessarily depends on a careful assessment of the facts at issue in a particular case, see generally *Amnesty Am. v. Town of W. Hartford*, 361 F.3d at 128 (holding that deliberate indifference determination "need not rely on any particular factual showing"). The operative inquiry is whether those facts demonstrate that the policymaker's inaction was the result of "conscious choice" and not "mere negligence." Id. (*internal quotation marks omitted*); *see City of Canton v. Harris*, 489 U.S. at 389. Thus, deliberate indifference may be inferred where "the need for more or better supervision to protect against constitutional violations was obvious," *Vann v. City of New*

*York*, 72 F.3d 1040, 1049 (2d Cir. 1995), but the policymaker "fail[ed] to make meaningful efforts to address the risk of harm to plaintiffs," *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007); see also *Board of Cnty. Comm'rs v. Brown*, 520 U.S. at 407 (holding that deliberate indifference requires proof that "municipal actor disregarded a known or obvious consequence of his action" (internal quotation marks omitted)); *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992) (framing deliberate indifference inquiry in three parts: (1) policymaker knows "to a moral certainty" that its employees will confront a given situation; (2) either situation presents employees with difficult choice that will be made less so by training or supervision, or there is a record of employees mishandling situation; and (3) wrong choice by employees will frequently cause deprivation of constitutional rights (internal quotation marks omitted)). *Cash v. County of Erie,* 654 F.3d 324 (2d Cir 2011).

Once again, both Plaintiff's have good faith reasons to assert that the above factors exist and can be proven in their respective cases. In both cases, the sources of that evidence, witnesses, records, policies, etc. are virtually identical. As well, it would be necessary, were the cases to remain separate, to disclose the deposition transcripts of witnesses in either case. As such, it can only be for the benefit of all that we do not complicate these matters further with useless duplication of effort. Plaintiffs Kelly Glover and Sgt. Kevin Murphy therefore respectfully request that the Court exercise its discretion to consolidate these matters in the interests of justice and judicial economy.

May 3, 2019

*Jeffrey R. Parry*

_____
Jeffrey R. Parry
Attorney for Plaintiffs Kelly
Glover and Sgt. Kevin Murphy
Bar Roll No.: 508023
7030 East Genesee Street
Fayetteville, N.Y. 13066
(315)424-6115
JeffreyParry404@gmail.com