**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KEVIN MURPHY,**

|  |  |
|---|---|
| **Plaintiff,** | **5:18-cv-1218** |
|  | **(GLS/CFH)** |

       **v.**

**ONONDAGA COUNTY et al.,**

       **Defendants.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Office of Jeffrey R. Parry<br>7030 East Genesee Street<br>Fayetteville, NY 13066 | JEFFREY R. PARRY, ESQ. |
| Office of Jarrod W. Smith<br>11 South Main Street<br>P.O. Box 173<br>Jordan, NY 13080 | JARROD W. SMITH, ESQ. |
| **FOR THE DEFENDANTS:**<br>*Onondaga County, The Onondaga*<br>*Sheriff's Department, Carl Hummel,*<br>*William Fitzpatrick, Stefano*<br>*Cambareri, Melanie S. Carden*<br>*& Lindsey M. Luczka* | |
| Onondaga County Department<br>of Law<br>John H. Mulroy Civic Center<br>421 Montgomery Street, 10th Floor<br>Syracuse, NY 13202 | JOHN E. HEISLER, JR., ESQ. |

*Eugene Conway, Joseph*

*Ciciarelli, Michael Dickinson,*
*Jammie Blumer, Jonathan Anderson,*
*Joseph Peluso, Roy Gratien*
*& Jason Cassalia*
Costello, Cooney & Fearon, PLLC ROBERT J. SMITH, ESQ.
211 W. Jefferson Street            ELIZABETH A. HOFFMAN,
Syracuse, NY 13202                 ESQ.

500 Plum Street                    KATHERINE STEWART, ESQ.
Suite 300
Syracuse, NY 13204

*Bryan K. Edwards & Wescott*
*Events, LLC*
Hancock Estabrook, LLP             JOHN L. MURAD, JR., ESQ.
1800 AXA Tower I                   ANNELIESE ALIASSO, ESQ.
100 Madison Street
Syracuse, NY 13202

Goldberg, Segalla Law Firm         CHRISTINA M. VERONE
5786 Widewaters Parkway            JULIANO, ESQ.
Syracuse, NY 13214

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Kevin Murphy commenced this civil rights action against

defendants Onondaga County, The Onondaga County Sheriff's

2

Department, Eugene Conway, Joseph Ciciarelli, Michael Dickinson,[1]

Jammie Blumer, Jonathan Anderson, Joseph Peluso, Roy Gratien, Jason

Cassalia, Carl Hummel, William Fitzpatrick, Stefano Cambareri, Melanie S.

Carden, Lindsey M. Luczka, Bryan K. Edwards, and Westcott Events, LLC,

pursuant to 42 U.S.C. §§ 1983 and 1985, 18 U.S.C. § 1964 (Civil

Racketeer Influenced and Corrupt Organizations (RICO) Act), and New

York State law, with the individual defendants all being sued in their

individual and official capacities.  (Am. Compl., Dkt. No. 60.)[2]

Pending before the court are motions for judgment on the pleadings

filed by Conway (Dkt. No. 88), Blumer, (Dkt. No. 90), Peluso, (Dkt. No. 92),

Gratien, (Dkt. No. 94), Anderson, (Dkt. No. 96), Cassalia, (Dkt. No. 98),

Ciciarelli, (Dkt. No. 100), and Dickinson, (Dkt. No. 102) (hereinafter,

collectively referred to as the "Sheriff Defendants"), a motion to amend the

_____

[1]  Plaintiff refers to Dickinson as both "Dickinson" and "Dickenson," the court will refer to this defendant as Dickinson.

[2]  For the sake of clarity, Dkt. No. 60, is deemed the operative pleading.  On June 7, 2019, Murphy filed a motion to amend the complaint.  (Dkt. No. 50.)  The motion was unopposed, and the clerk of the court was directed to file Exhibit A to the motion, (Dkt. No. 50, Attach. 1), as the amended complaint, (Dkt. No. 53).  On July 1, 2019, the amended complaint was filed.  (Dkt. No. 56.)  However, on July, 2, 2019, the amended complaint was filed again, by Murphy, with the only apparent change being the inclusion of counsel's name.  (Dkt. No. 58.)  Then again the amended complaint was filed on July 19, 2019, by Murphy, this time attaching previously omitted summonses.  (Dkt. No. 60.)  To the extent defendants address Dkt. No. 56, 58, and/or 60 in their submissions, the court will construe them as against Dkt. No. 60.

amended complaint filed by Murphy, (Dkt. No. 123), a motion to dismiss the amended complaint filed by Edwards and Westcott, (Dkt. No. 143), a motion to amend the RICO statement filed by Murphy, (Dkt. No. 157), a motion to construe their prior motion to dismiss as against any second amended complaint and/or to deny the second amended complaint filed by Edwards and Westcott, (Dkt. No. 144), a motion requesting guidance in responding to Murphy's amended RICO statement filed by the Sheriff Defendants, (Dkt. No. 155), a motion informing the court of alleged "improprieties" by defendants, requesting that the amended RICO statement be accepted as timely, and seeking to file a further amended complaint filed by Murphy, (Dkt. No. 156), an August 30, 2021, letter motion seeking relief that, admittedly, is unclear to the court filed by Murphy, (Dkt. No. 159), and, finally, another motion to further amend the amended complaint filed by Murphy, (Dkt. No. 170).

For the reasons that follow, the Sheriff Defendants' Rule 12(c) motions, (Dkt. No. 88; Dkt. No. 90; Dkt. No. 92; Dkt. No. 94; Dkt. No. 96; Dkt. No. 98; Dkt. No. 100; Dkt. No. 102), are granted in part and denied in part, as described below.  Edwards and Westcott's Rule 12(b)(6) motion (Dkt. No. 143), is granted.  Murphy's motion to amend the amended

4

complaint, (Dkt. No. 123), is denied as moot.  Murphy's subsequent motion

to amend the amended complaint, (Dkt. No. 170), and his motion to amend

the RICO statement, (Dkt. No. 157), are denied.  Edwards and Westcott's

motion regarding Murphy's proposed amended complaint, (Dkt. No. 144),

is granted, to the extent it sought denial of Murphy's motion to amend, and

denied in all other respects.  The Sheriff Defendants' motion requesting

guidance in responding to the amended RICO statement, (Dkt. No. 155), is

denied as moot.  Murphy's motion  informing the court of alleged

"improprieties" by defendants, requesting that the amended RICO

statement be accepted as timely, and seeking to file a further amended

complaint, (Dkt. No. 156), and August 30, 2021, letter motion, (Dkt. No.

159), are denied.

## II.  __Background__[3]

Murphy is a Sergeant in the Onondaga County Sheriff's Department.

(Am. Compl. ¶ 2.)  The Sheriff Defendants were, or are, also members of

the Sheriff's Department.  (_Id._ ¶¶ 6-13.)  Conway is the Sheriff, Cassalia is

the Undersheriff, Gratien, who has since retired, was an Assistant Police

---

[3]  The facts are drawn from Murphy's amended complaint, (Dkt. No. 60), and presented
in the light most favorable to him.

5

Chief, Ciciarelli is the Chief Police Deputy, Dickinson is a Captain and Patrol Commander, Blumer and Anderson are Lieutenants, and Peluso, who has since retired, was a Sergeant and is now a Special Patrol Officer at the Onondaga County Civic Center.  (*Id.* ¶¶ 6-13, 67.)

Murphy warned his superior officers in the Sheriff's Department of "illegal arrests, inadequate police work, improper training, poor supervision, racially motivated behavior and improper, unprofessional and illegal conduct" committed by members of the Sheriff's Department.  (*Id.* ¶ 29.) As a result of this, Murphy was "forbidden [from] do[ing] police work," relieved of specific duties, forbidden from giving orders to subordinates, "required to sit at a desk during his entire shift doing nothing whatsoever," forbidden from using a patrol car or displaying his uniform in public, "subject[ed] to threatening and abusive behavior" by others in the Sheriff's Department, was "deprived of police assistance and . . . castigated for his efforts when his . . . wife was menaced and assaulted," has had his overtime opportunities reduced, "has been ordered to undertake menial tasks under circumstances that were deliberately chosen to cause him physical discomfort and agitation," passed over for a promotion, subjected to "repeated unwarranted police and grand jury investigations," "arbitrarily

transferred," "depriv[ed] . . . of income," and was "subjected to public ridicule and embarrassment." (*Id.* ¶ 245.)

Specifically, around November 2008, Murphy discovered improprieties surrounding the involvement of the Sheriff's Department with respect to an individual who committed suicide in the Onondaga County Justice Center. (*Id.* ¶¶ 36-38.) Murphy reported these improprieties, including the falsifying of medical records, to unnamed "supervising officers," and Conway. (*Id.* ¶¶ 39-43.)

On May 30, 2015, Murphy reported to Peluso an instance where a complaint was made by an African-American woman, which Murphy claimed was not properly addressed "due to her ethnic background and her sex," (*id.* ¶¶ 49-55), and requested that the incident be investigated internally, (*id.* ¶¶ 98-100). Murphy was later aggressively confronted by Peluso, who "was loud, screaming and belligerent," and conveyed to Murphy that Peluso did not want an investigation into the woman's complaint, and insinuated that it was inappropriate for Murphy to go against him. (*Id.* ¶¶ 63-64.) Murphy was again aggressively confronted by Peluso at a later date, and, after the confrontation, "bec[a]me[] sick" and was "admitted to a hospital with chest pains and high blood pressure,"

7

causing him to miss work for several weeks.  (*Id.* ¶¶ 134, 140, 143.)

On March 9, 2016, Murphy informed Conway "of the improper use of a temporary holding cell to hold prisoners," potentially in violation of their rights.  (*Id.* ¶¶ 69-70.)  Murphy documented a similar violation shortly thereafter to "his chain of command," including Gratien, who, along with Conway, failed to remedy the situation.  (*Id.* ¶¶ 72-75.)

On April 23, 2016, Murphy became aware of an unconstitutional search and seizure of a suspect's blood, and, in an attempt to investigate it, contacted Blumer.  (*Id.* ¶¶ 78-90.)  Blumer told Murphy that she would handle the matter.  (*Id.* ¶ 90.)  Murphy later discovered that Peluso "falsified the police report to cover up the illegal search and seizure."  (*Id.* ¶ 92.)  Murphy later learned that Blumer and Peluso contacted others in the Sheriff's Department, including Gratien, and stated that Murphy "was to blame for the illegal search."  (*Id.* ¶¶ 93-95.)  Murphy was later informed "that, according to . . . Gratien, Murphy was not promoted to Lieutenant because he interferes with investigations of others."  (*Id.* ¶ 97.)  Peluso later filed a "vacuous" hostile work environment complaint against Murphy, intended to prevent him from being promoted.  (*Id.* ¶ 101.)  Murphy notified Ciciarelli and Gratien of the complaint, and requested that it be

investigated, but his request was ignored.  (*Id.* ¶¶ 102-04.)

On August 17, 2016, Murphy met with Ciciarelli and informed him of the Sheriff's Department's prior failure to properly investigate the aforementioned complaint made by an African-American woman based on "racial and sexual discrimination."  (*Id.* ¶¶ 105-06.)  Murphy also informed Ciciarelli of the illegal search and seizure and "illegal and falsified reports filed by Peluso," of which Gratien knew.  (*Id.* ¶¶ 107-09.)  Murphy reported to Ciciarelli that "Gratien had expressed his opinion that Murphy should not be promoted due to his interference with other investigations."  (*Id.* ¶ 111.)  Finally, Murphy conveyed to Ciciarelli that an "inordinate number of arrests [were being] made by [members of the Sheriff's Department] that were illegal for lack of probable cause."  (*Id.* ¶ 112.)  After this meeting, Ciciarelli conveyed to an unnamed individual that "he investigated the situation and discovered that some of . . . Murphy's allegations were true."  (*Id.* ¶ 116.)

On August 29, 2016, Murphy was ordered to meet with Dickinson and Murphy's direct supervisor, Lieutenant Caruso.  (*Id.* ¶¶ 59, 118.)  During this meeting Murphy voiced his concerns to Dickinson regarding the illegal arrests conducted by members of the Sheriff's Department.  (*Id.* ¶ 119.)  Dickinson then ordered Murphy to "no longer do police work while

under his command" specifically instructing Murphy "to refrain from initiating investigations . . . to no longer apply for search warrants."  (*Id.* ¶ 121.)  Murphy and Caruso both stated that this discipline was unjustified.  (*Id.* ¶¶ 122-23.)  Ciciarelli was later informed of Dickinson's order.  (*Id.* ¶ 132.)

From that point forward, Murphy faced various forms of discipline from members of the Sheriff's Department, including being ordered to "remove" his personal file cabinet, (*id.* ¶ 130), being required to work on Thanksgiving and Christmas, (*id.* ¶ 147), being told that he "ha[d] no duties and no responsibilities and [could not] independently perform any police related duties during his 10-hour shift[s]," (*id.* ¶ 152), and had his teaching schedule at the Police Academy reduced to just one class, at the behest of Dickinson, (*id.* ¶¶ 154-55).

Then, on June 24, 2017, Murphy's wife "was struck by an unruly security guard and subjected to other untoward conduct" while attending a concert at the Amphitheater on Onondaga Lake.  (*Id.* ¶ 158b.[4])  The security guard was employed by Westcott, which is owned and operated by

---

[4]  The amended complaint contains two paragraphs numbered "158" and two numbers "159."  To the extent these paragraph are cited, they will be denoted as "158a" and "158b," and "159a" and "159b."

Edwards.  (*Id.* ¶ 159b.)  Murphy was working that day at the venue as "Venue Supervisor."  (*Id.* ¶ 164.)  Murphy reported the incident involving his wife to Captain M. Pellizzari, and was subsequently relieved of his duties at the Amphitheater based upon complaints made by Edwards, who stated "that if Murphy work[ed there] in the future, the security company w[ould] walk off the job."  (*Id.* ¶ 168.)

After the incident with his wife, Murphy continued to faced inter-Department discipline, including threats of "baseless" reprimand from Anderson for "silent insolence," (*id.* ¶ 196-98), which Murphy believed was at the behest of Peluso, (*id.* ¶ 198); having an internal investigation opened against him surrounding his alleged improper use of his personal vehicle, (*id.* ¶¶ 202-04), which lead to Murphy's surveillance by Dickinson, (*id.* ¶ 202); further transfer, adding thirty miles to his daily commute, (*id.* ¶¶ 206-08); being prohibited by Dickinson from using a Sheriff's Department vehicle and being forced to cover his uniform when in public, (*id.* ¶ 210).  When Murphy "[wa]s flagrantly disobeyed by [his] subordinates," the subordinates "face[d] no discipline" even after Murphy reported their insubordination.  (*Id.* ¶¶ 212-13.)  Murphy was ordered to inspect thirty patrol vehicles "in contradiction to established policy" even

11

though he was not sufficiently dressed to perform this task.  (*Id.* ¶¶ 215-16.)  Murphy was given two "counseling memos" at the behest of Dickinson, accusing him of intentionally misrepresenting Dickinson's past orders and alleging violations of department policy.  (*Id.* ¶ 219.)

Murphy filed this suit on October 11, 2018.  (*Id.* ¶ 229; *see* Dkt. No. 1.)  After doing so, he "had several improper, unsupported and baseless referrals to the Onondaga County Sheriff's Office Internal Affairs Office" by Dickinson, (Am. Compl. ¶ 229), and he was transferred "without legitimate reason to such a position that would cause him to lose secondary employment opportunities and an immediate loss of income," (*id.* ¶ 242).  At an unspecified time, Conway requested that District Attorney Fitzpatrick "institute an unwarranted criminal action against Murphy because it [wa]s impossible to silence him using 'in-house' means." (*Id.* ¶ 234.)

### III.  **Standard of Review**

#### A.    **Leave to Amend**

The filing of amended complaint is governed by Rule 15 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 15.  Rule 15 provides that courts "should freely give leave" to amend a complaint

"when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility."  *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000); *see Couloute v. Ryncarz*, No. 11-CV-5986, 2012 WL 541089, at *3 (S.D.N.Y. Feb. 17, 2012) (citation omitted).  However, motions to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008); *see Monahan*, 214 F.3d at 283.  The decision to grant or deny a motion to amend is committed to the sound discretion of the trial court, and the court's decision is not subject to review on appeal except for abuse of discretion.  *See Fielding v. Tollaksen*, 510 F.3d 175, 179 (2d Cir. 2007).

Northern District of New York Local Rule 15.1(a) states, in relevant part: "[A] motion [to amend] must set forth specifically the proposed insertions and deletions of language and identify the amendments in the proposed pleading, either through the submission of a redline/strikeout version of the pleading sought to be amended or through other equivalent

13

means."  Failure to comply with Local Rule 15.1(a) can result in denial of a

motion to amend.  *See Cottone v. Does*, No. 1:17-cv-1006, 2018 WL

2021513, at *4 (N.D.N.Y. Apr. 30, 2018)

## B.   <u>Motion to Dismiss</u>

"The standard for addressing a Rule 12(c) motion for judgment on

the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for

failure to state a claim."  *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233,

234 (2d Cir. 2012) (internal quotation marks and citation omitted).  The

standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will

not be repeated here.  For a full discussion of the governing standard, the

court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz,

LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on other

grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191 (2d

Cir. 2015).

## IV.  <u>Discussion</u>

## A.   <u>Murphy's Motions to Amend</u>

On January 10, 2021, Murphy moved to amend his amended

complaint.  (Dkt. No. 123).  On November 19, 2021, Murphy filed another

motion to amend, (Dkt. No. 170), and therefore Murphy's former motion to

amend is denied as moot.[5]  *See Warren v. U.S.*, 859 F. Supp. 2d 522, 526 (W.D.N.Y. 2012) (denying a pending motion to amend as moot after a subsequent motion to amend was filed).

In accordance with the court's October, 18, 2021 Text-Only Order, (Dkt. No. 164), Murphy was required to seek leave of the court before filing anything, which he did, (Dkt. No. 165).  In granting leave, the court noted that:

> Murphy's motion for leave to amend shall be filed on or before November 19, 2021.  Failure to file by that deadline will result in the summary denial of the motion for failure to comply with this Text Only Order. Moreover, failure to strictly comply with the Local Rules of Practice, and, in particular, Rules 7.1 and 15.1, will result in summary denial of the motion.

(Dkt. No. 169.)  The court deemed it necessary to be explicit in its instructions due to Murphy's history of untimely filings, (Dkt. 154 (filed two days after the required date)), failure to comply with the Local Rules, (Dkt. No.123 (failing to comply with Local Rule 15.1(a)), and general lack of

---

[5]  On August 8, 2021, Murphy filed a motion informing the court of alleged "improprieties" by defendants, requesting that the amended RICO statement be accepted as timely, and seeking to file a further amended complaint.  (Dkt. No. 156.)  To the extent this motion sought leave to amend, it is denied as moot for the same reasons.  Further, Edwards and Westcotts' motion regarding Murphy's proposed amended complaint, (Dkt. No. 144), is granted, to the extent it sought denial of Murphy's motion to amend, and denied in all other respects.

attention to detail with respect to prior submissions.[6]

Murphy's November 19, 2021, motion to amend indicated via red text proposed amendments to his *proposed second amended complaint*, (Dkt. No. 123, Attach. 1), rather than the operative complaint, (Dkt. No. 60).  Therefore, the court cannot "identify the amendments in the proposed pleading" to the "pleading sought to be amended," and can only readily discern the proposed amendments to Murphy's *proposed* second amended complaint, *which is not* the operative pleading.  *See* N.D.N.Y. L.R. 15.1(a).  For this reason, and because the court took special pains to ensure compliance with the Local Rules, and warned Murphy about the consequences of his failure to do so, Murphy's motion to amend, (Dkt. No.

---

[6] For example, Murphy's amended complaint contains multiple errors in paragraph numbering (*e.g.* subsequent paragraphs being numbered as follows: 157, 158, 159, 158, 159, 160; 266, 195, 267; and omitting paragraph number 248).  Further, the amended complaint spells defendant's names in alternating fashions (*e.g.* Dickinson and Dickenson; Blumer and Bloomer).  In his response to Ciciarelli's motion for judgment on the pleadings, (Dkt. No. 100), Murphy refers to defendant Conway rather than Ciciarelli, (Dkt. No. 126 at 5).  Many of Murphy's responses to the Sheriff Defendants' Rule 12(c) motions contained errors in the table of contents, including omitting or repeating Roman numerals (*e.g.*, subsequent sections being enumerated as follows: I., III., V., VI.; and repeating the numeral VII.).  (*See*, *e.g.*, Dkt. No. 124.)  Murphy submitted his motion to amend without a cover page and unsigned.  (Dkt. No. 170.)  In Murphy's response to Cassalia's motion for judgment on the pleadings, (Dkt. No. 98), Murphy responds to a statute of limitations argument that was not made by Cassalia, (Dkt. No. 118 at 17-18.)  Finally, in his various responses to the Sheriff Defendants' Rule 12(c) motions, Murphy completely fails to address arguments made by these defendants.  (*See*, *e.g.*, Dkt. No. 125 (failing to address arguments regarding his § 1983 retaliation claims).)  While the court can tolerate the occasional inadvertent typographical error, Murphy's errors are numerous, and occur after his counsel has requested a substantial amount of extension of filing deadlines. (Dkt. No. 106; Dkt. No. 109; Dkt. No. 114; Dkt. No. 119; Dkt. No. 146.)

170), is denied.  *See Cottone*, 2018 WL 2021513, at *4 ("[F]ailure to meet

the requirements of [the] Local Rule[s] is an independent ground upon

which to deny [a motion to amend]."); (Dkt. No. 169 ("[F]ailure to strictly

comply with the Local Rules of Practice, and, in particular, Rules 7.1 and

15.1, will result in summary denial of the motion.")).

## B.   RICO

Murphy's first and second causes of action allege RICO claims

against Conway, Ciciarelli, Dickinson, Blumer, Anderson, Peluso, Gratien,

Cassalia, Hummel, Cambareri,[7] Fitzpatrick, Carden, Luczka, and Edwards

in both their individual and official capacities.[8]  (Am. Compl. at 47, 51.)

The Sheriff Defendants and Edwards move to dismiss these causes of

action, for several reasons, (Dkt. No. 88, Attach. 1 at 4-11; Dkt. No. 90,

Attach. 1 at 4-11; Dkt. No. 92, Attach. 1 at 5-12; Dkt. No. 94, Attach. 1

at 4-11; Dkt. No. 96, Attach. 1 at 4-11; Dkt. No. 98, Attach. 1 at 3-11;  Dkt.

No. 100, Attach. 1 at 4-11; Dkt. No. 102, Attach. 1 at 4-11; Dkt. No. 143,

---

[7]  Cambareri is not listed as a defendant in any of the causes of action headings in the amended complaint, but is listed as a defendant in the paragraphs following Murphy's first cause of action, (Am. Compl. ¶¶ 250-53), therefore the court will construe Cambareri as a defendant to Murphy's first cause of action only.

[8]  Unless otherwise noted, for all of Murphy's causes of action, the individual defendants are sued in their individual and official capacities.

Attach. 3 at 4-11), but, most notably, because Murphy failed to comply with Local Rule 9.2.  (Dkt. No. 120 at 1; Dkt. No. 143, Attach 3. at 9.) Hummel, Cambareri, Fitzpatrick, Carden, and Luczka did not move to dismiss.

RICO grants standing to pursue a civil damages remedy to "any person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]."  18 U.S.C. § 1964(c).  The statute "imposes liability on individuals working for an 'enterprise' that commits certain predicate crimes that amount to a 'pattern of racketeering activity.'"  *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017) (quoting 18 U.S.C. §§ 1962, 1964).  A plaintiff asserting a RICO violation must adequately plead "(1) the defendant's violation of [18 U.S.C.] § 1962, (2) an injury to plaintiff's business or property, and (3) the causation of the injury by the defendant's violation."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283 (2d Cir. 2006) (internal quotation marks and citations omitted; alteration in original).  To adequately plead the causation element of a RICO claim, the plaintiff must allege that the defendant's conduct was the "legal, or proximate, cause of [his] injury, as well as the logical, or 'but for,' cause."  *Id.* at 283-84 (quoting *Commercial Cleaning Servs., L.L.C. v. Colin Serv.*

18

*Sys.*, 271 F.3d 374, 380 (2d Cir. 2001)).

To allege a RICO conspiracy under 18 U.S.C. § 1962(d), a plaintiff must allege "a conspiracy to commit a substantive RICO violation." *Spool*, 520 F.3d at 183.  In particular, "[b]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990).  As a result, to properly allege a civil RICO conspiracy under Section 1962(d), a plaintiff must allege that the defendant "knew about and agreed to facilitate the [RICO] scheme." *Salinas v. United States*, 522 U.S. 52, 66 (1997).  Regarding the facilitation requirement, "a plaintiff must allege that the conspirator intended to further an endeavor that, if completed, would satisfy all of the elements of a substantive" criminal offense; however, it is sufficient for a plaintiff to allege that the "conspirator adopted the goal of furthering or facilitating the criminal endeavor." *Malvar Egerique v. Chowaiki*, No. 19 Civ. 3110, 2020 WL 1974228, at *8 (S.D.N.Y. Apr. 24 2020).

"Local Rule 9.2 requires a party asserting a claim under RICO to 'file a RICO statement within thirty (30) days of the filing of the pleading

19

containing such claim.'" *Poole v. Bendixen*, No. 5:20-CV-0697, 2021 WL 3737780, at *11 (N.D.N.Y. Aug. 24, 2021).  Failure to timely file a RICO statement pursuant to this rule is grounds for dismissal of the RICO claims.  *See Pierce v. Homecomings Fin. LLC*, No. 17-CV-0882, 2017 WL 5991750, at *2 n.2 (N.D.N.Y. Dec. 4, 2017) (noting that, where a plaintiff failed to file a RICO statement pursuant to Local Rule 9.2, "[p]laintiff's RICO claim may be dismissed for this reason alone"); *see also Amaker v. Kelley*, No. 9:01-CV-877, 2009 WL 385413, at *11 (N.D.N.Y. Feb. 9, 2009) (holding that failure to file a RICO statement "provid[es] a threshold for dismissal of [a] plaintiff's RICO claim"); *Spoto v. Herkimer Cnty. Trust*, No. 99-CV-1476, 2000 WL 533293, at *3 n.2 (N.D.N.Y. Apr. 27, 2000) ("[T]he [c]ourt would be justified to dismiss [the] complaint based upon the[] very untimely filing of the[] Local Rule 9.2 RICO Statement.").

Murphy filed the first iteration[9] of his amended complaint alleging RICO causes of action on July 1, 2019, (Dkt. No. 56), and he filed his RICO statement on August 16, 2021, (Dkt. No. 154), well beyond the time permitted by Local Rule 9.2.  Because of this violation of Local Rule 9.2, Murphy's first and second causes of action are dismissed as against all

---

[9]  *See supra* note 2.

defendants.  *See Poole*, 2021 WL 3737780, at *11 (denying RICO claims where Plaintiff failed to timely file a RICO statement under Local Rule 9.2, "regardless of Plaintiffs' good-faith work on other aspects of th[e] case"); *see also Citadel Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 146-47 (S.D.N.Y. 2000) (dismissing complaint against non-moving defendants where moving defendants raised arguments that supported dismissal of all defendants because plaintiff was "on notice" of these arguments and had "responded in full").

Given that Murphy's RICO statement was untimely, and his RICO claims are dismissed, Murphy's motion to amend the RICO statement, (Dkt. No. 157), is denied, and his motion that, among other things, requested that the amended RICO statement be accepted as timely, to the extent it sought such relief, (Dkt. No. 156), is denied as moot.  Further, the Sheriff Defendants' motion requesting guidance on responding to Murphy's amended RICO statement, (Dkt. No. 155), is also denied as moot.

## C.   <u>Retaliation</u>

Murphy's third, fourth, and sixth causes of action allege retaliation in violation of 42 U.S.C. § 1983 and Article 1, Section 8 of the New York

State Constitution against Onondaga County, the Onondaga County

Sheriff's Department, the Sheriff Defendants, Hummel, Fitzpatrick,

Carden, and Luczka.  (Am. Compl. at 52, 56, 64.)  The Sheriff Defendants

moved to dismiss these claims, arguing that there is no causal connection

between Murphy's speech and any alleged adverse employment action.

(Dkt. No. 88, Attach. 1 at 11-13; Dkt. No. 90, Attach. 1 at 11-13; Dkt. No.

92, Attach. 1 at 12-13; Dkt. No. 94, Attach. 1 at 12-13; Dkt. No. 96, Attach.

1 at 12-14; Dkt. No. 98, Attach. 1 at 11-12;  Dkt. No. 100, Attach. 1 at 12-

14; Dkt. No. 102, Attach. 1 at 13-15.)  Dickinson also contends that

Murphy's speech was made as an employee of the Sheriff's Department,

rather than as a member of the public, and that any actions taken by

Dickinson were "at most *de minimis* inconvenience[s]" but not adverse

employment actions.  (Dkt. No. 102, Attach. 1 at 14-15.)  Onondaga

County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick,

Carden, and Luczka do not move to dismiss.

Murphy fails to address any of the arguments made by Blumer,

Anderson, Peluso, Gratien, and Ciciarelli.  (Dkt. No. 124; Dkt. No. 125;

Dkt. No. 126.)  With respect to Conway, Murphy appears to contend that

supervisory liability provides a basis to avoid dismissal, and that a further

amended complaint will also support his retaliation claims against Conway.  (Dkt. No.116 at 15-16.)  Regarding Dickinson and Casallia, Murphy appears to also argue that supervisory liability provides a basis to avoid dismissal, and that Dickinson and Cassalia's "efforts were focused on the fabrication of false reports."  (Dkt. No. 117 at 13; 118 at 13.) Murphy does not provide a single citation to the amended complaint in support of this position.  (*Id.*)

To withstand a motion to dismiss on a First Amendment retaliation claim, a plaintiff must demonstrate: (1) that he "engaged in protected First Amendment activity;" (2) that "he suffered an adverse employment action;" and (3) that "there was a causal connection between the protected activity and the adverse employment action."  *Osuan v. City of New York*, No. 18cv151, 2019 WL 2544866, at *4 (S.D.N.Y. June 20, 2019) (quoting *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007)); *see Smith v. County of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015).

Whether an employee's speech is protected by the First Amendment is a two-part inquiry.  *See Reynolds v. Village of Chittenango*, No. 5:19-cv-416, 2020 WL 1322509, at *3 (N.D.N.Y. Mar. 20, 2020) (citation omitted).  First, the subject of the employee's speech must be "a

matter of public concern." *Id.* (quoting *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011)).  Second, the employee must be speaking "as a citizen rather than solely as an employee."  *Id.* (quoting *Jackler*, 658 F.3d at 235).

An adverse employment action is qualified as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."  *Shanks v. Vill. of Catskill Bd. of Trs.*, 653 F. Supp. 2d 158, 166 (N.D.N.Y. 2009) (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225-26 (2d Cir. 2006)).  "Under this definition, adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand[;] as well as lesser actions such as negative reviews, false accusations, and menial job assignments."  *Id.* (quoting *Zelnik*, 464 F.3d at 226) (internal quotation marks and other citation omitted).

Finally, a plaintiff must establish "a causal relationship between the protected speech and the adverse employment action."  *Id.*  "The causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action."  *Cotarelo v. Vill. of Sleepy Hollow Police Dept.*, 460 F.3d 247, 251

24

(2d Cir. 2006) (citation omitted).  "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus."  *Shanks*, 653 F. Supp. 2d at 167 (citation omitted).  To demonstrate a causal connection, such to "survive a motion to dismiss," a plaintiff "need not clearly establish that the defendant harbored retaliatory intent.  It is sufficient to allege facts which could reasonably support an inference to that effect."  *Stajic v. City of New York*, 214 F. Supp. 3d 230, 235 (S.D.N.Y. 2016) (quoting *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 418 (2d Cir. 1999)).

The Second Circuit has recently clarified that "there is no special rule for supervisory liability [under § 1983].  Instead, a plaintiff must plead and prove that each . . . defendant, through [their] own individual actions, has violated the Constitution."  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and citation omitted).

As a preliminary matter, Murphy's retaliation claim pursuant to Article I, Section 8 of the New York State Constitution is duplicative of his § 1983 First Amendment retaliation claim.  *See Leibovitz v. City of New*

25

*York*, No. 14-CV-7106, 2018 WL 1157872, at *21 (E.D.N.Y. Mar. 2, 2018) ("[V]arious federal courts in this circuit have held that there is no private right of action under the New York State Constitution where . . . remedies are available under [§] 1983.") (internal quotation marks and citations omitted); *cf. Sanders v. City of New York*, No. 12 CV 2906, 2015 WL 2331105, at *9 (S.D.N.Y. May 11, 2015).  Thus, Murphy's sixth cause of action, alleging a violation of the New York Constitution, is dismissed as to all defendants.

With respect to Murphy's First Amendment retaliation claims brought pursuant to § 1983, he has adequately pleaded that he was speaking as a citizen on matters of public concern when he reported to his superior officers "illegal arrests, inadequate police work, improper training, poor supervision, racially motivated behavior and improper, unprofessional[,] and illegal conduct" committed by members of the Sheriff's Department. (Am. Compl. ¶ 29); *see Raymond v. City of New York*,  317 F. Supp. 3d 746, 755-56 (S.D.N.Y. 2018) (holding that a police officer "engaged in speech in his capacity as a private citizen on a matter of public concern" when he alerted his commanding officer of improper arrests); *see also Matthews v. City of New York*, 779 F.3d 167, 174 (2d Cir. 2015) ("[W]hen

a public employee whose duties do not involve formulating, implementing, or providing feedback on a policy . . . engages in speech concerning that policy, and does so in a manner in which ordinary citizens would be expected to engage, he or she speaks as a citizen, not as a public employee."); *see also Shanks*, 653 F. Supp. 2d at 165 (N.D.N.Y. 2009) (finding that a firefighter reporting fire department safety violations was protected speech).

Further, Murphy has adequately pleaded that he faced adverse employment action.  Specifically, Murphy alleges that Conway requested that Fitzpatrick "institute an unwarranted criminal action against Murphy," (Am. Compl. ¶ 234), that Gratien, Blumer,[10] and Peluso colluded to create a falsified police report in an attempt to blame Murphy for an illegal search and seizure conducted by others in the Sheriff's Department, raised by Murphy, (*id.* ¶ 322), that Anderson filed an unsubstantiated internal complaint against Murphy, (*id.* ¶¶ 198, 322), that Peluso filed multiple unsubstantiated internal complaints against him, (*id.* ¶¶ 101, 137), at least one of which was "specifically intended to prevent . . . Murphy from being

---

[10]  While the amended complaint refers to an individual named "Bloomer," out of an abundance of caution, the court will assume this was an error by Murphy, and assume he intended to refer to defendant Blumer.

promoted," (*id.* ¶ 101), and, finally, that Dickinson drastically reduced Murphy's duties and responsibilities, including his teaching role at the police academy, and made "several improper, unsupported and baseless referrals [of Murphy] to the Onondaga County Sheriff's Office Internal Affairs Office," (*id.* ¶¶ 121, 154-55, 229).  These all constitute adverse employment actions.  *See Shanks*, 653 F. Supp. 2d at 166.[11]

Finally, Murphy has adequately pleaded a causal connection between his speech and these adverse actions with respect to the Sheriff Defendants, other than Ciciarelli and Cassalia.  The amended complaint alleges that, after Murphy informed Conway of the alleged corruption in the Sheriff's Department, Conway requested that Fitzpatrick "institute an unwarranted criminal action against Murphy, because it [wa]s impossible to silence him using 'in-house' means."  (Am. Compl. ¶¶ 69, 234.)  At this stage in the litigation, this is adequate to demonstrate a causal connection between Murphy's speech and the alleged adverse employment action

---

[11]  Murphy also pleads numerous "lesser" actions, which, when considered together would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Zelnik*, 464 F.3d at 225-26; *see Philips v. Bowan*, 278 F.3d 103, 109 (2d Cir. 2002).  For example, Murphy alleges he was forbidden from giving orders to subordinates, forbidden from using a patrol car or from displaying his uniform in public, "subject[ed] to threatening and abusive behavior" by others in the department, had his overtime opportunities reduced, was "ordered to undertake menial tasks under circumstances that were deliberately chosen to cause him physical discomfort and agitation," was arbitrarily transferred, and was "subjected to public ridicule and embarrassment."  (Am. Compl. ¶ 245.)

carried out by Conway.  *See Reynolds*, 2020 WL 1322509, at *3 (holding a causal connection existed where "after [plaintiff] complained about his defective patrol car, he was subject to . . . threats of false and malicious criminal prosecution" (internal quotation marks and citation omitted)).

With respect to Gratien, Blumer, and Peluso, the amended complaint alleges that, shortly after raising concerns to Blumer regarding an improper search and seizure conducted by members of the Sheriff's Department, which involved Peluso falsifying a policy report to cover the incident up, Gratien, Blumer, and Peluso "collu[ded]" to create a falsified police report in an attempt to blame Murphy for the incident.  (Am. Compl. ¶¶ 88-95, 322).  Further, after that incident, Gratien expressed that Murphy "was not promoted to Lieutenant because he interferes with investigations of others."  (*Id.* ¶ 97.)  At this stage in the litigation, these allegations are adequate to demonstrate a causal connection between Murphy's speech and the adverse employment actions carried out by Gratien, Blumer, and Peluso.[12]  *See Jackson*, WL 5698535, at *5 (finding

_____

[12]  Further, with respect to Peluso, the amended complaint also alleges that shortly after raising concerns to Peluso that a complainant was not properly "attent[ed to] by [the Sheriff's Department]. . . due to [the complainant's] ethnic background and her sex," Murphy was aggressively confronted by Peluso, who later filed a "vacuous" internal complaint against Murphy which was "specifically intended to prevent . . . Murphy from being promoted."  (Am. Compl. ¶¶ 44-55, 63-66, 101.)  This further demonstrates a causal connection between Murphy's speech and the adverse employment actions carried out by Peluso. *See Shanks*,

a causal connection existed based on allegations that the defendants threatened and harassed the plaintiff, and falsely represented the plaintiff's performance reviews).

With respect to Anderson, the amended complaint alleges that, he filed an internal affairs complaint against Murphy, "following Peluso's lead." (Am. Compl. ¶¶ 198, 322). Given that Peluso's complaint was brought shortly after Murphy raised concerns to Peluso about an instance where a complainant was not "attent[ed to] by [the Sheriff's Department] . . . due to her ethnic background and her sex," that the complaint was "specifically intended to prevent . . . Murphy from being promoted," and because Anderson, was "following Peluso's lead," (Am. Compl. ¶¶ 44-55, 101, 322), Anderson's Rule 12(c) motion is denied. *Stajic*, 214 F. Supp. 3d at 235 (holding, that to "survive a motion to dismiss," a plaintiff "need not clearly establish that the defendant harbored retaliatory intent. It is sufficient to allege facts which could reasonably support an inference to that effect" (citation omitted)).

With respect to Cicarielli and Cassalia, Murphy has failed to adequately plead a cause of action for retaliation. Regarding Cassalia,

_____

653 F. Supp. 2d at 167.

there is not a single *specific* allegation in the amended complaint demonstrating that Cassalia was a participant in any adverse employment action.  Regarding Cicarielli, Murphy alleges simply that Ciciarelli was aware of the adverse employment action, but not that he was involved in anyway, which is inadequate.  *See Tangreti*, 983 F.3d at 618.

To the extent Murphy argues that future amendments will cure any defect with respect to this clause of action, (*see*, *e.g.*, Dkt. No.116 at 15-16), this argument does not save his claim.[13]  *See Austin Air Sys., Ltd. v. Sager Elec. Supply Co., Inc.*, No. 19-CV-562JLS, 2022 WL 464230, at *8 (W.D.N.Y. Feb. 15, 2022) ("In ruling on a motion under Rule 12(b)(6), . . . the court may consider only 'the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated into the complaint by reference.'" (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)); *see also supra* Part IV.A. (denying Murphy's pending motions to amend).

For these reasons, Murphy's third and fourth causes of action are dismissed as against Cicarielli and Cassalia, and may proceed against all

---

[13]  To the extent Murphy makes this argument with respect to his other causes of action, it is similarly unpersuasive.  (*See*, *e.g.*, Dkt. No. 116 at 21, 23-24; Dkt. No. 117 at 14, 19-20; Dkt. No. 118 at 14, 19-20; Dkt. No. 124 at 15; Dkt. No. 125 at 15-16; Dkt. No. 126 at 15.)

of the other Sheriff Defendants, as well as the non-moving parties:

Onondaga County, the Onondaga County Sheriff's Department, Hummel,

Fitzpatrick, Carden, and Luczka.

**D.    Section 1985 Conspiracy**

Murphy alleges a § 1985 conspiracy against Onondaga County, the

Onondaga County Sheriff's Department, the Sheriff Defendants, Hummel,

Fitzpatrick, Carden, and Luczka.  The Sheriff Defendants move to dismiss

this claim, arguing among other things, that, if the court is to construe this

cause of action as brought under § 1985(2), that the "amended complaint

contains only vague and conclusory allegations which fail to identify a

single act [by any of the Sheriff Defendants] in furtherance of any

conspiracy."  (Dkt. No. 129 at 7; *see* Dkt. No. 130 at 6; Dkt. No. 131 at 6;

Dkt. No. 135 at 6-7; Dkt. No. 136 at 6-7; Dkt. No. 137 at 6-7.)  Onondaga

County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick,

Carden, and Luczka do not move to dismiss.

Murphy argues that "unquestionably, [he] was the subject of efforts

by all of the defendants to impede, hinder, obstruct and/or defeat his

pursuit of justice during the course of this federal proceeding," citing only

one example in support of this position, that he "was the subject of a

grand jury target letter" that "was based on no probable cause and was purely an attempt to deter [him]."  (Dkt. No. 116 at 18; Dkt. No. 124 at 12; Dkt. No. 125 at 12-13; Dkt. No. 126 at 12.)  Further, with respect to certain defendants, Murphy argues that future "supplement[ations]" will cure any defect in the amended complaint regarding his § 1985 claim.  (Dkt. No. 117 at 14; Dkt. No. 118 at 14.)

As a preliminary matter, there is some dispute pursuant to which paragraph of 42 U.S.C. § 1985 Murphy brings his fifth cause of action. Murphy's fifth claim is for "conspiracy to retaliate in violation of the first amendment" under 42 U.S.C. § 1985.  (Am. Compl. at 60-61.)  It appears that Murphy brings this cause of action under 42 U.S.C. § 1985(3) (Am. Compl. ¶ 321 ("Defendants . . . entered into a corrupt agreement to injure . . .Murphy . . . [and] deprive him of his Constitutional rights")); *see Oliver v. N.Y. State Police*, No. 1:19-cv-233, 2020 WL 1849484, at *9 (N.D.N.Y. Apr. 13, 2020) (holding that,"[t]o state a conspiracy claim under Section 1985(3), among other things, a plaintiff must allege: "1) a conspiracy; 2) for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws" (quoting *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015)).

However, after the Sheriff Defendants, in their various Rule 12(c) motions, noted that, under 42 U.S.C. § 1985(3), a plaintiff must allege "some class based discriminatory amicus," which Murphy had not adequately pleaded, (*see*, *e.g.*, Dkt. No. 88, Attach. 1 at 14 (citing *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 96 (N.D.N.Y. 2013)), Murphy argues that his fifth cause of action is actually conspiracy to obstruct justice, in violation of the second clause of 42 U.S.C. § 1985(2), (*see*, *e.g.*, Dkt. 116 at 17-18.

Even though the court is not persuaded that Murphy intended to bring this cause of action under 42 U.S.C. § 1985(2), out of an abundance of caution, it will analyze it as such.

The second clause of 42 U.S.C. § 1985(2) prohibits "two or more persons" from conspiring for to purpose of:

> [I]mpeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

With respect to a claim brought under this clause of § 1985(2), a plaintiff must plead "(1) a conspiracy, (2) for the purpose of impeding,

34

hindering, obstructing, or defeating, in any manner, (3) the due course of justice in any State or Territory, (4) with intent to deny any citizen the equal protection of the laws." *Thomas v. DeCastro*, No. 14-CV-6409, 2018 WL 1322207, at *12 (S.D.N.Y. Mar. 13, 2018) (internal quotation marks and citation omitted).  "[A] claim under the second clause of [§] 1985(2) requires a showing of class-based invidiously discriminatory animus on the part of the conspiring parties." *Langton v. Town of Chester Library Bd.*, No. 14-cv-9474, 2020 WL 2850898, at *4 (S.D.N.Y. June 1, 2020) (internal quotation marks and citation omitted); *see Ruggiero v. City of Cortland*, No. 5:17-CV-790, 2018 WL 5983505, at *8 (N.D.N.Y. Nov. 14, 2018) (dismissing a conspiracy claim brought under the second clause of § 1985(2) where, plaintiff "failed to plausibly allege that any of th[e] conspiratorial misconduct stem[ed] from the kind of racial or other class-based animus required by controlling federal law" (internal quotation marks and citation omitted)).

Murphy concedes the fact that he "has not alleged that damages were caused as a result of racial discrimination or other discriminatory means," (*see*, *e.g.*, Dkt. No. 124 at 11), a requirement under the second clause of § 1985(2).  *See Langton*, 2020 WL 2850898, at *4; *see*

*Ruggiero*, 2018 WL 5983505, at *8.  Because Murphy makes no attempt

to demonstrate racial or other class-based animus[14] on behalf of any

defendant, he has failed to adequately plead a claim under the second

clause of §1985(2), and, thus, his fifth cause of action is dismissed as

against all defendants.[15]  *See Citadel*, 123 F. Supp. at 146-47.

### E.   Equal Protection

Murphy's seventh cause of action alleges violations of the Equal

Protection Clause of the Fourteenth Amendment, under 42 U.S.C. § 1983

against Onondaga County, the Onondaga County Sheriff's Department,

the Sheriff Defendants, Hummel, Fitzpatrick, Carden, and Luczka.  (Am.

Compl. at 68.)  The Sheriff Defendants move to dismiss this claim, raising

several arguments in support of their position, (Dkt. No. 88, Attach. 1 at

---

[14]  Murphy's argument that he is a member of a "class of one," (*see*, *e.g.*, Dkt. No. 125 at 13), is inapplicable here.  *See infra* Part IV.E.; *see also Volunteer Fire Ass'n of Tappan, Inc. v. Cty. of Rockland*, No. 09-CV-4622, 2010 WL 4968247, at *8 n.13 (S.D.N.Y. Nov. 24, 2010) ("A plaintiff alleging a Section 1985 violation may not proceed under a 'class of one' theory." (citation omitted)).

[15]  Because Murphy is represented by counsel, his amended complaint is not entitled to the special solicitude afforded to pro se pleadings.  *See Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006).  Therefore, the court has not considered whether the amended complaint states a claim pursuant to the first clause of § 1985(2), which requires that a plaintiff plead: "(1) a conspiracy between two or more persons, (2) to deter a witness by force, intimidation or threat from attending court or testifying freely in any pending matter, which (3) results in injury to the plaintiff," *Greene v. City of New York*, No. 08-cv-00243, 2017 WL 1030707, at *31 (E.D.N.Y. Mar.15, 2017) (quoting *Chalal v. Paine Webber Inc.*, 725 F.2d 20, 23 (2d Cir.1984)), and which does not require a showing of any class-based animus.  *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *c.f. Langton v. Town of Chester*, No. 14 Civ. 9474, 2017 WL 6988708, at *6 (S.D.N.Y. Sept. 26, 2017) (citation omitted).

15-17; Dkt. No. 90, Attach. 1 at 16-17; Dkt. No. 92, Attach. 1 at 16-17;

Dkt. No. 94, Attach. 1 at 16-18; Dkt. No. 96, Attach. 1 at 16-17; Dkt. No.

98, Attach. 1 at 14-16;  Dkt. No. 100, Attach. 1 at 16-18; Dkt. No. 102,

Attach. 1 at 17-18).  Relevant here, they contend that Murphy bases his

equal protection claim on a class-of-one theory, which is inapplicable.

(Dkt. No. 129 at 7-8; Dkt. No. 130 at 7; Dkt. No. 131 at 7; Dkt. No. 135 at

7-8; Dkt. No. 136 at 7-8; Dkt. No. 137 at 7-8.)  Onondaga County, the

Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden,

and Luczka do not move to dismiss.

"The Equal Protection Clause of the Fourteenth Amendment

requires the government to treat all similarly situated individuals alike."

*Young v. Suffolk County*, 705 F. Supp. 2d 183, 204 (E.D.N.Y. 2010) (citing

*City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, (1985)).

When a plaintiff does not allege an equal protection violation due to their

membership in a protected class, they may still prevail on their claim

under a "class-of-one" theory.  *See NRP Holdings LLC v. City of Buffalo*,

916 F.3d 177 (2d Cir. 2019) ("[T]he Supreme Court has . . . endorsed a

class-of-one theory for equal protection claims, under which a single

individual can claim a violation of her Equal Protection rights based on

arbitrary disparate treatment." (internal quotation marks and citations omitted)); *see also Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To succeed under a class-of-one theory, a plaintiff must demonstrate "[1] that []he has been intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (citation omitted).

In *Engquist v. Oregon Department of Agriculture*, the Supreme Court held that the class-of-one theory has no application in the public employment context. *See* 553 U.S. 591, 607-08 (2008); *see also Booker v. City of New York*, No. 14 Civ. 9801, 2017 WL 151625, at *5 (S.D.N.Y. Jan. 13, 2017) ("[B]ecause 'class-of-one' Equal Protection claims are unavailable in the public employment context, plaintiff cannot state a viable federal Equal Protection claim [under § 1983].").

Because Murphy's equal protection claim relies on the class of one theory, (Dkt. No. 116 at 18-19 ("It has long been held that plaintiff might bring a suit based upon his membership in [a] class[-]of[-]one . . . . [Murphy's] class . . . may be articulated in any number of ways including 'all Sheriff's Deputies', 'all Sheriff's Deputies in Onondaga County',

'all police officers', etc." (internal citation omitted)); *see* Dkt. No. 117 at 15;
Dkt. No. 118 at 15; Dkt. No. 124 at 12-13; Dkt. No. 125 at 13; Dkt. No.
126 at 12-13), and Murphy's claim is in the context of public employment,
it must be dismissed.  *See Stas v. Lynch*, 576 F. Supp. 2d 322, 323, 325
(D. Conn. 2008) (finding that former Connecticut State Police Trooper did
not have a valid claim against Connecticut State Police official pursuant to
§ 1983, under the class-of-one theory, because this theory was
inapplicable in the context of public employment).  For this reason,
Murphy's seventh cause of action is dismissed as against all defendants.
See *Citadel*, 123 F. Supp. 2d at 146-47.

## F.   <u>Defamation</u>

Murphy's eighth cause of action is for defamation, defamation per
se, slander, and libel against Onondaga County, the Onondaga County
Sheriff's Department, the Sheriff Defendants, Hummel, Fitzpatrick,
Carden, Luczka, and Edwards.  (Am. Compl. at 70.)

The Sheriffs Defendants and Edwards move to dismiss these
claims, with the Sheriffs Defendants arguing that Murphy has not
adequately pleaded defamation, (Dkt. No. 88, Attach. 1 at 17-18; Dkt.
No. 90, Attach. 1 at 18-20; Dkt. No. 92, Attach. 1 at 18-19; Dkt. No. 94,

Attach. 1 at 19-20;  Dkt. No. 96, Attach. 1 at 18-19; Dkt. No. 98, Attach. 1 at 16-17; Dkt. No. 100, Attach. 1 at 18-20; Dkt. No. 102, Attach. 1 at 19-21), and that, even if he did, the claims are time-barred, (Dkt. No. 88, Attach. 1 at 19-20; Dkt. No. 90, Attach. 1 at 17-18; Dkt. No. 92, Attach. 1 at 17-18; Dkt. No. 94, Attach. 1 at 18-19; Dkt. No. 96, Attach. 1 at 17-18; Dkt. No. 100, Attach. 1 at 18; Dkt. No. 102, Attach. 1 at 18-19), and Edwards making similar arguments, (Dkt. No. 143, Attach. 3 at 11-14). Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka do not move to dismiss.

Murphy argues that the statue of limitations does not bar his claims because "[e]ven if the slanderous comments made by defendants during the meeting that [sic] the Onondaga County District Attorney's Office were the only comments to base his claim on, . . . [that] this meeting occurred in or about January of 2019." (Dkt. No. 116 at 20-21; *see* Dkt. 117 at 17; Dkt. No. 118 at 17; Dkt. No. 124 at 14-15; Dkt. No. 125 at 15; Dkt. No. 126 at 14-15; Dkt. No. 148 at 24.)  He also contends that the statute of limitation does not bar his claims because the defendants' "investigations and allegations against Murphy continued even as this case progressed." (Dkt. No. 124 at 15; Dkt. No. 125 at 15; Dkt. No. 126 at

150; see Dkt. No. 148 at 25.)  Murphy further asserts that he has

sufficiently pleaded all elements to his defamation claims because "[a]s to

who the defaming remarks were made, that would include the defendants

herein, selected members of the District Attorney's Office, possibly grand

jury participants and others.  As to the words stated, that would include

false allegations that Murphy had committed a crime."  (Dkt. No. 116 at

20; *see* Dkt. No. 117 at 18; Dkt. No. 118 at 18; Dkt. No. 124 at 15; Dkt.

No. 125 at 15; Dkt. No. 126 at 15; *see* Dkt. No. 148 at 25.)  Murphy also

asserts that his proposed second amended complaint establishes

additional support for his defamation claims.  (Dkt. No. 116 at 21; Dkt. No.

124 at 15; Dkt. 125 at 15-16; Dkt. No. 126 at 15.)  Finally, he argues that

discovery would allow him to cure any defects in his defamation cause of

action.  (Dkt. No. 118 at 18; Dkt. No. 148 at 25 ("As it cannot be denied

that there was a Grand Jury investigation, there must be a criminal

complaint from Edwards/ Westcott.  Further, it is obvious that there is no

probable cause to institute such an investigation.  Undeniably, someone

lied.  Plaintiff asks only the opportunity to view these documents.  That is

only fair.").)

"Defamation . . . consist[s] of the twin torts of libel and slander."

*Alexander v. City of Syracuse*, No. 5:17-CV-1195, 2018 WL 6591426, at

*6 (N.D.N.Y. Dec. 13, 2018) (quoting *Albert v. Loksen*, 239 F.3d 256, 265

(2d Cir. 2001)).  To state a claim for defamation under New York law, a

plaintiff must allege "a false statement, published without privilege or

authorization to a third party, constituting fault as judged by, at a

minimum, a negligence standard, . . . caus[ing] special harm or

constitut[ing] defamation per se."  *Jackie's Enters., Inc. v. Belleville*, 165

A.D.3d 1567, 1569-70 (3d Dep't 2018) (citations omitted).  "While the

Second Circuit has abandoned the stringent *in haec verba* standard in

defamation cases, to comply with the dictates of Rule 8(a) a plaintiff must

still 'afford defendant sufficient notice of the communications complained

of to enable him to defend himself.'"[16]  *Simons v. New York*, 472 F. Supp.

2d 253, 267 (N.D.N.Y. 2007) (quoting *Kelly v. Schmidberger*, 806 F.2d 44,

46 (2d Cir.1986).

---

[16]  The Sheriff Defendants' argument that Murphy has failed to state a claim for defamation appears to be premised on the more stringent pleading requirements of N.Y. C.P.L.R. § 3016(a), which requires that "the particular words complained of shall be set forth in the complaint." (*See, e.g.*, Dkt. No. 88, Attach. 1 at 19.)  While the amended complaint does not meet this standard, "state procedural rules do not apply to federal courts . . . and federal courts instead apply the pleading standards set forth in Rule 8 of the Federal Rules of Civil Procedure."  *Nouinou v. Smith*, No. 20-CV-8682, 2021 WL 4340952, at *5 (S.D.N.Y. Sept. 22, 2021) (citing *Treistman v. Wacks*, No. 12-CV-1897, 2017 WL 639322, at *4 (N.D.N.Y. 2017)); *but see Nichols v. BAC Home Loans Servicing LP*, No. 1:13-CV-00224, 2013 WL 5723072, at *12 (N.D.N.Y. Oct. 18, 2013) (applying the heightened pleading standard of C.P.L.R. 3016 and requiring the plaintiff to plead "the particular words giving rise to his [defamation] claim"). However, as explained herein, Murphy's cause of action fails under either pleading standard.

For a defamation claim to survive a motion to dismiss, in compliance with Rule 8, a plaintiff must "identify (1) the allegedly defamatory statements; (2) the person who made the statements; (3) the time when the statements were made; and, (4) the third parties to whom the statements were published." *Hillary v. Vill. of Potsdam*, No. 7:12-cv-1669, 2015 WL 902930, at *11 (N.D.N.Y. Mar. 3, 2015) (citation omitted).  In other words, the allegations must include "the time, place, and manner of the false statement." *Arvanitakis v. Lester*, 145 A.D.3d 650, 651 (2d Dep't 2016).

As to slander per se, there are four categories of statements for which damages need not be shown: statements "(i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman." *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992) (citations omitted).

"Under New York law, the statute of limitations for a defamation claim is one year." *McKenzie v. Dow Jones & Co., Inc.*, 355 F. App'x 533, 535 (2d Cir.2009) (citing N.Y. C.P.L.R. § 215(3)).

With respect to Conway, Murphy fails to adequately plead a claim

43

for defamation.  Murphy alleges two arguably[17] defamatory statements attributable to Conway in the amended complaint.  (Am. Compl. ¶¶ 73, 234.)  The first of these statements occurred on March 9, 2016, (*Id.* ¶ 73), assuming *arguendo* that this statement was defamatory, it is time-barred, as it occurred more than one year prior to the commencement of this action, on October 11, 2018, (Dkt. No. 1).  The second statement attributable to Conway is: "Conway request[ed] . . . Fitzpatrick to institute an unwarranted criminal action against Murphy because it is impossible to silence him using 'in-house' means."  (Am. Compl. ¶ 234.)  Although Murphy appears to argue in his opposition papers that this occurred "in or about January of 2019," (Dkt. No. 116 at 21), the amended complaint does not allege when this statement was made, (Am. Compl. ¶ 234), and, thus, fails to adequately plead a claim for defamation against Conway. *See Moleon v. Alston*, No. 21 Civ. 1398, 2021 WL 5772439, at *15

---

[17] The court will not discuss statements attributable to any of the defendants that are clearly non-defamatory, such as: "Blumer indicated that she would address the matter with the deputy," (Am. Compl. ¶ 90), "Peluso . . . stated . . . that when he 'sixes' a complaint, it stays 'sixed,'" (*id.* ¶ 63), or "Ciciarelli informed Murphy that Gratien had not recorded the fact of the illegal search and seizure in his Duty Commander log for that night," (*id.* ¶ 110).  *See Premier Med. Sys., LLC v. NeuroLogica Corp.*, No. 1:21-cv-1337, 2022 WL 603999, at *12 (S.D.N.Y. Feb. 28, 2022) (finding that a defamatory statement must "expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and . . . deprive him of . . . friendly intercourse in society" (citation omitted).

(S.D.N.Y. Dec. 3, 2021) ("Where a plaintiff fails to identify . . . the time . . . in which [the statement] w[as] made, a defamation claim does not survive a motion to dismiss." (internal quotation marks and citation omitted)); *see also Austin Air Sys.*, 2022 WL 464230, at \*8 ("In ruling on a motion under Rule 12(b)(6), . . . the court may consider only 'the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated into the complaint by reference.'" (quoting *McCarthy*, 482 F.3d at 191)).

Murphy also fails to adequately plead a claim for defamation against Blumer, Peluso, Anderson, Gratien, and Dickinson. Murphy alleges several arguably defamatory statements attributable to these defendants in the amended complaint. (Am. Compl. ¶¶ 65, 95, 97,111, 118, 124, 136, 141-42, 154, 168, 196, 322.) As alleged in the amended complaint, these statements were made "[a] few days [after]" May 30, 2015, (*id.* ¶¶ 49, 63, 65), on or about April 24, 2016, (*id.* ¶¶ 78, 93, 95), on or before June 3, 2016, (*id.* ¶ 97), on or before August 10, 2016, (*id.* ¶ 101), on September 29, 2016, (*id.* ¶¶ 134, 136-137), on October 5, 2016, (*id.* ¶ 141), "[d]uring the November, 2016 time period," (*id.* ¶ 154), and "on or about June 24, 2017," (*id.* ¶¶ 158, 168), and in or before September 2017, (*id.* ¶ 196).

45

Assuming without deciding that these statements were defamatory, they are time-barred, as they occurred more than one year prior to the commencement of this action, on October 11, 2018, (Dkt. No. 1).[18]

Nowhere in the amended complaint does Murphy attribute any specific defamatory statements to Cassalia or Ciciarelli,[19] and, thus, he has not made out a claim for defamation as against them.  *See Hillary*, 2015 WL 902930, at *11 (for a defamation claim to survive a motion to dismiss, a plaintiff must "identify . . . the allegedly defamatory statements . . . [and] the person who made the statements" (internal quotation marks and citation omitted)).

Finally, with respect to Edwards, Murphy has failed to adequately plead defamation.  The only arguably defamatory statement made by Edwards included in the amended complaint was made "on or about June

---

[18] Murphy also alleges, with respect to Dickinson, that, after Murphy brought this suit, Dickinson made "had several improper, unsupported and baseless referrals to the Onondaga County Sheriff's Office Internal Affairs Office."  (Am. Compl. ¶ 229.)  Murphy does not provide the content of these referrals, however, and, thus, this allegation does not allow him to avoid dismissal as to Dickinson.  *See Hillary*, 2015 WL 902930, at *11 (holding that, for a defamation claim to survive a motion to dismiss, a plaintiff must "identify . . . the allegedly defamatory statements" (citation omitted)).

[19] Murphy lists five ambiguous statements within his defamation cause of action, none of which are attributed to a particular defendant.  (Am. Compl. ¶ 360.)  To the extent these are alleged as against Cassalia, Ciciarelli, or any of the defendants, they do not make out a claim of defamation.  See *Hillary*, 2015 WL 902930, at *11 (for a defamation claim to survive a motion to dismiss a plaintiff must "identify . . . the person who made the statements" (citation omitted)).

24, 2017." (Am. Compl. ¶¶ 158, 168.)  Again, assuming *arguendo* that this statement was defamatory, it is time-barred, as it occurred more than one year prior to the commencement of this action, on October 11, 2018. (Dkt. No. 1.)

Finally, in Murphy's various opposition papers, he appears to make the same, or substantially similar, arguments, regardless of the applicability of the arguments to the specific motion he is opposing.  (*See, e.g.*, Dkt. 118 at 17-18 (responding to a statute of limitations argument that was not made with respect to this specific defendant).)  He argues that his claims are not time-barred because "[e]ven if the slanderous comments made by defendants during the meeting that the Onondaga County District Attorney's Office were the only comments to base his claim on, there is no problem with the statute of limitations . . . [because] this meeting occurred in or about January of 2019." (Dkt. No. 116 at 20-21; Dkt. 117 at 17; Dkt. No. 118 at 17; Dkt. No. 124 at 14-15; Dkt. No. 125 at 15; Dkt. No. 126 at 14-15).  This is borderline nonsensical.  It is not apparent to the court to which "meeting that [sic.] the Onondaga County District Attorney's Office" Murphy is referring, as the amended complaint does not discuss such a meeting.  If Murphy is referring to his allegation

47

that "Conway request[ed] District Attorney Fitzpatrick . . . institute an unwarranted criminal action against Murphy," (Am. Compl. ¶ 234), then this argument would have no baring on any claim against any defendant besides Conway,[20] as there is nothing indicating that any defendant besides Conway and Fitzpatrick were present or involved in this meeting, let alone made defamatory statements during the meeting.  Further, Murphy contends that "[defendant's] investigations and allegations against Murphy continued even as this case progressed," (Dkt. No. 124 at 15; Dkt. No. 125 at 15; Dkt. No. 126 at 150; see Dkt. No. 148 at 25), yet he provides no citations to the amended complaint in support of this position. Finally, Murphy's contention that future discovery would cure any defects in his defamation cause of action, (Dkt. No. 118 at 18; Dkt. No. 148 at 25), is equally unpersuasive.  *See Arrindel-Martin v. City of Syracuse*, No. 5:18-CV-780, 2018 WL 6622193, at *6 (N.D.N.Y. Dec. 18, 2018) ("[T]he purpose of the plausibility standard is to require a plaintiff to allege sufficient facts to state a claim; it is not a license for a plaintiff to conduct a fishing expedition in an attempt to obtain discovery that might support his allegations." (citation omitted)).

---

[20]  For the reasons noted above, Murphy's defamation claims against Conway are dismissed, regardless of this argument.

For these reasons, Murphy's eighth cause of action for defamation, defamation per se, slander, and libel is dismissed as against the Sheriff Defendants and Edwards, and remains against the non-moving defendants: Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka.

## G.   <u>Conspiracy to Defame</u>

Murphy's ninth cause of action is for conspiracy to defame against Onondaga County, the Onondaga County Sheriff's Department, the Sheriff Defendants, Hummel, Fitzpatrick, Carden, Luczka, Edwards, and Westcott.  (Am. Compl. at 73.)

"In order to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege *a cognizable tort*, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement."  *Fairstein v. Netflix, Inc.*, No. 20-cv-8042, 2021 WL 3501527, at *23 (S.D.N.Y. Aug. 9, 2021) (emphasis added) (quoting *Perez v. Lopez*, 948 N.Y.S.2d 312, 314 (2d Dep't 2012)).

Where a plaintiff fails to adequately plead "facts sufficient to demonstrate the underlying tort of defamation" their claims for civil conspiracy to commit defamation must also be dismissed.  *See Sparrow*

49

*Fund Mgmt. LP v. MiMedx Group, Inc.*, No. 18 Civ. 4921, 2019 WL 1434719, at \*12 (S.D.N.Y. Mar. 31, 2019); *see also Nunes v. Cable News Network, Inc.*, 520 F. Supp. 3d 549, 561 (S.D.N.Y. Feb. 19, 2021) ("In light of [p]laintiff's failure to plead a viable defamation claim, there is no underlying tort to support a viable claim for conspiracy here.").

Because Murphy's defamation claims against the Sheriff Defendants and Edwards are dismissed, his ninth cause of action for conspiracy to defame as against these same defendants and Westcott is likewise dismissed.  *See Sparrow*, 2019 WL 1434719, at \*12.  His defamation claims remain against the non-moving parties: Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka.

## H.    <u>Intentional Infliction of Emotional Distress</u>

Murphy's tenth cause of action alleges intentional infliction of emotional distress (IIED) against Onondaga County, the Onondaga County Sheriff's Department, the Sheriff Defendants, and Hummel.  (Am. Compl. at 77.)

The Sheriff Defenants argue that this claim must be dismissed for several reasons, (Dkt. No. 88, Attach. 1 at 21-23; Dkt. No. 90, Attach. 1

at 21-23; Dkt. No. 92, Attach. 1 at 22-23; Dkt. No. 94, Attach. 1 at 22-23; Dkt. No. 96, Attach. 1 at 22-23;  Dkt. No. 98, Attach. 1 at 28-20;  Dkt. No. 100, Attach. 1 at 22-23; Dkt. No. 102, Attach. 1 at 22-24), but most notably here, because Murphy's allegations do not meet the high standard required for a claim of intentional affliction of emotional distress, (Dkt. No. 88, Attach. 1 at 22-23; Dkt. No. 90, Attach. 1 at 22-23; Dkt. No. 92, Attach. 1 at 22-23; Dkt. No. 94, Attach. 1 at 22-23; Dkt. No. 96, Attach. 1 at 22-23; Dkt. No. 96, Attach. 1 at 22-23; Dkt. No. 98, Attach. 1 at 19-20; Dkt. No. 100, Attach. 1 at 22-23; Dkt. No. 102, Attach. 1 at 23-24).  Onondaga County, the Onondaga County Sheriff's Department, and Hummel do not move to dismiss.

With respect to Conway, Dicknson, and Cassalia, Murphy appears to concede this point, (Dkt. No. 116 at 23-24 ("Plaintiff's proposed amended complaint alleviates this inadvertent error . . . [a]ccordingly, plaintiff will move for an amended complaint to alleviate this inadvertent error and place this extreme conduct before the Court in th[i]s . . . cause[] of action."); *see* Dkt. No. 117 at 19-20; Dkt. No. 118 at 19-20), and argues, that with respect Blumer, Peluso, Gratien, Anderson, and Ciciarelli, the standard has been met, (Dkt. No. 124 at 16-17; Dkt. No. 125

at 17-18; Dkt. No. 126 at 16-17).

IIED is a "highly disfavored tort under New York law . . . . to be invoked only as a last resort." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (internal quotation marks and citations omitted). Under New York law, IIED has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and the injury; and (iv) severe emotional distress." *Chanko v. Am. Broad. Cos.*, 27 N.Y.3d 46, 56 (2016) (citation omitted).  As to the first element, the "conduct [must have] been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal quotation marks and citation omitted). This standard is "rigorous[] and difficult to satisfy." *Id.*  Establishing extreme and outrageous conduct "is difficult, even at the pleadings stage." *Ifill v. United Parcel Serv.*, No. 04Civ.5963, 2005 WL 736151, at *6 (S.D.N.Y. Mar. 29, 2005) (quoting *Conboy v. AT & T Corp.*, 84 F. Supp. 2d 492, 507 (S.D.N.Y. 2000)).  Indeed, "of the IIED claims considered by [the New York Court of Appeals], 'every one has failed because the

alleged conduct was not sufficiently outrageous.'" *Taylor v. N.Y.C. Fresh Market*, No. 19 CV 4797, 2020 WL 10356230, at *8 (E.D.N.Y. Dec. 23, 2020) (quoting *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122 (1993)).

Under the IIED heading in the amended complaint, Murphy alleges that he "was not allowed to appear in public in uniform," "was not allowed to supervise patrol officers," "was not allowed to do police work," "was required to sit at a desk all day, with no work, while others looked on," "was wrongly passed over for promotion in favor of an officer with less experience," and that his "wife was assaulted without the [Sheriff's] Department so much as instituting an investigation."  (Am. Compl. ¶ 391; *see id.* ¶ 245.)  These allegations do not meet the standard for IIED.  *See Kolchinsky v. Moody's Corp.*, No. 10 Civ. 6840, 2012 WL 639162, at *1-3, 7 (S.D.N.Y. Feb. 28, 2012) (holding that, where a plaintiff alleged, because of his role as a whistle blower, he was barred from meetings, demoted, had his responsibilities and salary decreased, defamed, and ultimately suspended from the company, that these "allegations do not have a hint" of the required extreme and outrageous conduct); *see also Ifill v. United Parcel Serv.*, No. 04Civ.5963, 2005 WL 736151, at *1-2, 7 (S.D.N.Y. Mar. 29, 2005) (finding that allegations that employer harassed,

discriminated, demoted, and retaliated against plaintiff were insufficient to state IIED).  For this reason, Murphy's tenth cause of action for IIED is dismissed as against the Sheriff Defendants.  This cause of action remains against the non-moving defendants: Onondaga County, the Onondaga County Sheriff's Department, and Hummel.

## I.    <u>Negligent Infliction of Emotional Distress</u>

Murphy's eleventh cause of action is for negligent infliction of emotional distress (NIED) against Onondaga County, the Onondaga County Sheriff's Department, the Sheriff Defendants, Hummel, Fitzpatrick, Carden, and Luczka.  (Am. Compl. at 79.)

The Sheriff Defendants argue that this cause of action must be dismissed against them because none of the Sheriff Defendants breached a duty owed to Murphy which resulted in a threat or endangerment to his physical safety.  (Dkt. No. 88, Attach. 1 at 24-25; Dkt. No. 90, Attach. 1 at 24-25; Dkt. No. 92, Attach. 1 at 24-25; Dkt. No. 94, Attach. 1 at 24-25; Dkt. No. 96, Attach. 1 at 24; Dkt. No. 98, Attach. at 21; Dkt. No. 100, Attach. 1 at 24-25; Dkt. No. 102, Attach. 1 at 25.)  Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka do not move to dismiss.

With respect to Conway, Dickinson, and Cassalia, Murphy appears to concede this point.  (Dkt. No. 116 at 23-24; Dkt. No. 117 at 19-20; Dkt. No. 118 at 19-20), and completely fails to address Blumer, Peluso, Gratien, Anderson, and Ciciarelli's arguments regarding NIED.  (Dkt. No. 124 at 16-17; Dkt. No. 125 at 17-18; Dkt. No. 126 at 16-17.)

Under New York law, a plaintiff may establish a claim for NIED in two ways, under the "bystander theory" or "direct duty theory."  See *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996).  A plaintiff may recover  "under the 'bystander' theory when: (1) [he] is threatened with physical harm as a result of defendant's negligence; and (2) consequently [he] suffers emotional injury from witnessing the death or serious bodily injury of a member of [his] immediate family."  *Id.* (citation omitted); *see Quinn v. U.S.*, 946 F. Supp. 2d 267, 278 (N.D.N.Y. 2013).  "A plaintiff may recover under a direct duty theory when [he] suffers an emotional injury from defendant's breach of a duty which unreasonably endangered [his] own physical safety." *Quinn*,  946 F. Supp. 2d at 278 (internal quotation marks and citation omitted); *see Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996).  Importantly, "[t]he duty in such cases must be specific to the plaintiff, and not some amorphous, free-floating duty to society."

*See Mortise*, 102 F.3d at 696 (citation omitted); *see also Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 285 (N.D.N.Y. 2018).

Murphy appears to seek recovery under a direct duty theory.  (Am. Compl. ¶¶ 393-99.)  However, Murphy does not plead that any of the Sheriff Defendants owned him a specific duty, but rather that "[d]efendants had a duty not only to avoid such conduct but, to conduct themselves in a civilized and professional manner."  (Am. Compl. ¶ 395.) Because Murphy has failed to plead a violation of a *specific* duty owed to him to him by any of the defendants, his eleventh cause of action for NIED is dismissed as against the Sheriff Defendants.  See *Burroughs*, 325 F. Supp. 3d at 285; *see also Leibenguth v. U.S.*, No. 08-CV-6008, 2009 WL 3165846, at *4 (W.D.N.Y. Sept. 29, 2009).  This claim remains against the non-moving defendants: Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka.

## J.  **Murphy's Other Motions**

Although it is admittedly not entirely clear to the court the full extent of the relief sought by Murphy in his motion informing the court of alleged "improprieties" by defendants, (Dkt. No. 156), and his August 30, 2021, letter motion, (Dkt. No. 159), to the extent they seek relief inconsistent

with the above, they are denied.

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Conway's motion for judgment on the pleadings

(Dkt. No. 88) is **GRANTED IN PART and DENIED IN PART** as follows:

> **GRANTED** as to the following claims, which are **DISMISSED**,
>
> Murphy's RICO claims; § 1985 conspiracy claim; retaliation
>
> claim pursuant to Article 1, Section 8 of the New York State
>
> Constitution; § 1983 equal protection claim; defamation
>
> claims; conspiracy to defame claim; IIED; and NIED; and
>
> **DENIED** in all other respects; and it is further

**ORDERED** that Blumer's motion for judgment on the pleadings (Dkt.

No. 90) is **GRANTED IN PART and DENIED IN PART** as follows:

> **GRANTED** as to the following claims, which are **DISMISSED**,
>
> Murphy's RICO claims; § 1985 conspiracy claim; retaliation
>
> claim pursuant to Article 1, Section 8 of the New York State
>
> Constitution; § 1983 equal protection claim; defamation
>
> claims; conspiracy to defame claim; IIED; and NIED; and
>
> **DENIED** in all other respects; and it is further

**ORDERED** that Peluso's motion for judgment on the pleadings (Dkt. No. 92) is **GRANTED IN PART and DENIED IN PART** as follows:

**GRANTED** as to the following claims, which are **DISMISSED**, Murphy's RICO claims; § 1985 conspiracy claim; retaliation claim pursuant to Article 1, Section 8 of the New York State Constitution; § 1983 equal protection claim; defamation claims; conspiracy to defame claim; IIED; and NIED; and

**DENIED** in all other respects; and it is further

**ORDERED** that Gratien's motion for judgment on the pleadings (Dkt. No. 94) is **GRANTED IN PART and DENIED IN PART** as follows:

**GRANTED** as to the following claims, which are **DISMISSED**, Murphy's RICO claims; § 1985 conspiracy claim; retaliation claim pursuant to Article 1, Section 8 of the New York State Constitution; § 1983 equal protection claim; defamation claims; conspiracy to defame claim; IIED; and NIED; and

**DENIED** in all other respects; and it is further

**ORDERED** that Anderson's motion for judgment on the pleadings (Dkt. No. 96) is **GRANTED IN PART and DENIED IN PART** as follows:

**GRANTED** as to the following claims, which are **DISMISSED**,

> Murphy's RICO claims; § 1985 conspiracy claim; retaliation

> claim pursuant to Article 1, Section 8 of the New York State

> Constitution; § 1983 equal protection claim; defamation

> claims; conspiracy to defame claim; IIED; and NIED; and

> **DENIED** in all other respects; and it is further

**ORDERED** that Cassalia's motion for judgment on the pleadings

(Dkt. No. 98) is **GRANTED**; and it is further

**ORDERED** that Ciciarelli's motion for judgment on the pleadings

(Dkt. No. 100) is **GRANTED**; and it is further

**ORDERED** that Dickinson's motion for judgment on the pleadings

(Dkt. No. 102) is **GRANTED IN PART and DENIED IN PART** as follows:

> **GRANTED** as to the following claims, which are **DISMISSED**,

> Murphy's RICO claims; § 1985 conspiracy claim; retaliation

> claim pursuant to Article 1, Section 8 of the New York State

> Constitution; § 1983 equal protection claim; defamation

> claims; conspiracy to defame claim; IIED; and NIED; and

> **DENIED** in all other respects; and it is further

**ORDERED** that the following claims remain: Murphy's third and

fourth causes of action for § 1983 retaliation against Onondaga County,

the Onondaga County Sheriff's Department, Conway, Dickinson, Blumer, Anderson, Peluso, Gratien, Hummel, Fitzpatrick, Carden, Luczka; Murphy's eighth cause of action for defamation, defamation per se, libel, and slander against Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka; Murphy's ninth cause of action for conspiracy to commit defamation, defamation per se, libel, and slander against Onondaga County, the Onodaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka; Murphy's tenth cause of action for IIED against Onondaga County, the Onondaga County Sheriff's Department, and Hummel; and, Murphy's eleventh cause of action for NIED against Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka; and it is further

**ORDERED** that Murphy's motion to amend the amended complaint (Dkt. No. 123) is **DENIED** as moot; and it is further

**ORDERED** that Edwards and Westcott's motion to dismiss (Dkt. No. 143) is **GRANTED**; and it is further

**ORDERED** that Edwards and Westcott's motion regarding Murphy's proposed amended complaint (Dkt. No. 144) is **GRANTED IN PART and**

**DENIED IN PART** as follows:

> **GRANTED** to the extent it sought denial of Murphy's motion to
>
> amend, and
>
> **DENIED** in all other respects; and it is further

**ORDERED** that the Sheriff Defendants' motion requesting guidance

in responding to the amended RICO statement (Dkt. No. 155) is **DENIED**

as moot; and it is further

**ORDERED** that the following defendants are dismissed: Cassalia,

Ciciarelli, Cambareri, Edwards, and Westcott; and it is further

**ORDERED** that Murphy's motion informing the court of alleged

"improprieties" by defendants, requesting that the amended RICO

statement be accepted as timely, and seeking to file a further amended

complaint (Dkt. No. 156) is **DENIED**; and it is further

**ORDERED** that Murphy's motion to amend the RICO statement,

(Dkt. No. 157) is **DENIED**; and it is further

**ORDERED** that Murphy's August 30, 2021, letter motion (Dkt. No.

159), to the extent it seeks relief from the court, is **DENIED**; and it is

further

**ORDERED** that Murphy's motion to amend, (Dkt. No. 170) is

**DENIED**; and it is further

ORDERED that the parties shall contact Magistrate Judge Christian

F. Hummel to schedule further proceedings; and it is further

ORDERED that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

March 18, 2022
Albany, New York

Gary L. Sharpe
Gary L. Sharpe
U.S. District Judge

62